UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YALE-NEW HAVEN HOSPITAL, | : | |
|     Interpleader Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CLAIRE M. NICHOLLS | : | 3:12-cv-01319-WWE |
| | : | |
| and | : | |
| | : | |
| BARBARA NICHOLLS, | : | |
|     Interpleader Defendants. | : | |

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This is an interpleader action initiated by plaintiff Yale-New Haven Hospital ("YNHH"). YNHH is the Plan Administrator for Harold H. Nicholls' retirement plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

Harold H. Nicholls died on February 11, 2012. At the time of his death, Mr. Nicholls had funds in his retirement plans. Subsequent to his death, YNHH received competing claims to the funds from Barbara Nicholls, as surviving spouse, and Claire M. Nicholls, as an alternate payee under two *nunc pro tunc* domestic relation orders.

**BACKGROUND**

On May 16, 1987, Harold H. Nicholls married Claire M. Nicholls in New Haven, Connecticut. On September 5, 2008, after more than twenty-one years, the marriage was dissolved by order of the State of Connecticut Superior Court, Judicial District of New Haven at New Haven by Judge Denise D. Markle.

A document between the parties entitled "Settlement Agreement/Stipulation to Judgment" dated September 5, 2008, is attached to the Dissolution of Marriage Judgment and its

terms are incorporated by reference into the Judgment.

The property settlement agreement states that "the husband shall transfer to the wife one-half of that portion of his PENSION and RETIREMENT ACCOUNTS, which were accumulated during the marriage." The value of these accounts in July 2008 was approximately $112,000.

The agreement further provides that "since the division of the [retirement account assets] is as of the date of the final decree for dissolution of marriage, the wife shall share, in proportion to her ownership interest in the asset, in all earnings, gains, losses, appreciation, and/or depreciation, due to market activity from the date of the final decree for dissolution of marriage to the date of actual assignment and transfer."

Finally, the agreement made clear that the Superior Court "shall retain jurisdiction to amend the aforesaid orders regarding the assignment and transfers to [Claire M. Nicholls] from said retirement plans or retirement accounts for the purposes of establishing or maintaining a Qualified Domestic Relations Order under the Retirement Equity Act of 1984 acceptable to plan administrators and with provisions which carry out the intent of the division of the parties' retirement assets."

Harold M. Nicholls died on February 12, 2012.

Barbara Nicholls, Harold's surviving spouse, presented a claim for the entirety of the plan funds. She asserts that she is entitled to the funds because there was no qualified domestic relations order ("QDRO") entered by the Plan Administrator at the time of Mr. Nicholls' death. However, Claire Nicholls asserts that she is entitled to a portion of the funds in accordance with the Superior Court Dissolution of Marriage Judgment dated September 5, 2008.

The Plan Administrator acknowledges that the funds, in the sum of $351,392.52 (as of

July 12, 2012) are now due and payable to either Barbara Nicholls or Claire Nicholls or some combination of both.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

**ERISA**

Generally, ERISA preempts stat laws that "relate to" employee benefits plans.  29 U.S.C. §1144(a).  ERISA, however, creates several exceptions to its general preemption provision, one of which is relevant here: ERISA does not preempt "qualified domestic relations orders (within

the meaning of section 1056(d)(3)(B)(i) of this title)...." 29 U.S.C. § 1144(b)(7).

"The concept of the QDRO originated with the Retirement Equity Act ("REA"), an amendment to ERISA which took effect, for relevant purposes, on January 1, 1985." Metropolitan Life Ins. Co. v. Bigelow, 283 F.3d 436, 441 (2d Cir. 2002).

> Since employment benefits were commonly at issue in state court matrimonial disputes and since ERISA's preemption provision had the unintended effect of disturbing interests and expectations fixed in such proceedings, the REA was designed to give effect to divorce decrees and related state-court orders insofar as they pertained to ERISA-regulated plans. Boggs v. Boggs, 520 U.S. 833, 847, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (stating that "one of REA's central purposes ... is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death [,] the surviving spouse").
>
> The REA defines a QDRO as a domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan...." 29 U.S.C. § 1056(d)(3)(B)(i)(I) (2000). In order to qualify as a QDRO, a domestic relations order must also meet several other requirements.

Bigelow, 283 F.3d at 441.

The Court finds the September 5, 2008 Superior Court dissolution of marriage judgment, which included approval of a property settlement agreement, to be a qualified domestic relations order in that it substantially complies with 29 U.S.C. § 1056(d)(3)(B)(i). See id at 444. Indeed, Section 1056(d)(3)(B)(ii) specifically includes approvals of property settlement agreements within the definition of "domestic relations order." As the property settlement agreement designates that "the husband shall transfer to [Claire M. Nicholls] one half of that portion of his PENSION and RETIREMENT ACCOUNTS, which were accumulated during the marriage," Claire M. Nicholls is entitled to these assets. Specifically, Claire M. Nicholls "shall share, in

4

proportion to her ownership interest in the asset, in all earnings, gains, losses, appreciation, and/or depreciation, due to market activity from the date of the final decree for dissolution of marriage to the date of the actual assignment and transfer."

## **CONCLUSION**

For the foregoing reasons, Claire M. Nicholls' motion for summary judgment is GRANTED, and Barbara Nicholls' motion for summary judgment is DENIED.

Dated this 5th day of December, 2013, at Bridgeport, Connecticut.


                               /s/
                        WARREN W. EGINTON
                        SENIOR UNITED STATES DISTRICT JUDGE